## In re BLUMLEIN et al.

*(Circuit Court, S. D. New York. January 5, 1892.)*

CUSTOMS DUTIES—TARIFF OF 1883—CLASSIFICATION—SUMATRA LEAF TOBACCO.

Unstemmed Sumatra leaf tobacco consisted of 37 bales, composed, as to marks and numbers, of three lots, the tobacco being packed in the usual manner in which Sumatra tobacco is imported; weighed by the United States weigher upon arrival; one bale in ten being sent to the appraiser's stores for examination, and being there examined by the United States examiner by opening each of the sample bales in the usual manner employed in making such examinations in the tobacco trade, and ten hands being withdrawn from each sample bale duly examined by the examiner, and found to consist entirely of leaves suitable in size and fineness of texture for cigar wrappers; and the hands being thereupon weighed by the examiner and the leaves counted, and the proportion of hands containing leaves requiring more than 100 to weigh a pound, and those containing leaves less than 100 to the pound, being ascertained and separated; and the same proportions being calculated upon the sample bale and upon the lot represented by such sample bale; such proportion consisting, in the case of the first lot, of 20 per cent. of the tobacco found to be of leaves requiring more than 100 to weigh a pound, and 80 per cent. of leaves running less than 100 to the pound; in the second lot, of 18 bales, all of the hands being found to contain leaves requiring less than 100 to the pound; in the third lot, of 9 bales, 60 per cent. being found to contain leaves requiring more than 100 to the pound, and 40 per cent. containing leaves of less than 100 to the pound; and the duty being thereupon assessed by the collector upon the tobacco at the rate of 75 cents per pound upon the proportion containing leaves requiring more than 100 to the pound, and 35 cents per pound upon the proportion consisting of leaves running less than 100 to the pound: *held*, that the proceedings of the collector in the

ascertainment of the character, size, fineness, and weight of the tobacco were regular and proper, but that, the result of his examination showing that in no distinguishable mass of the tobacco was there 85 per cent. of the requisite size and of the necessary fineness of texture, and of which more than 100 leaves were required to weigh a pound, none of the tobacco was dutiable at 75 cents per pound under Schedule F, paragraph 246, Tariff Ind. (New,) of the tariff act of March 3, 1883, but that the whole 37 bales were dutiable only at 35 cents per pound, under paragraph 247, Tariff Ind. (New,) of the same schedule and tariff act.

At Law.

Application by the importers, Blumlein & Co., under the provisions of section 15 of the act of congress of June 10, 1890, entitled "An act to simplify the laws in relation to the collection of the revenues," for a review by the United States circuit court of the decision of the board of United States general appraisers at the port of New York, affirming the decision of the collector in the classification for duty of certain unstemmed Sumatra leaf tobacco, entered at said port by the above-named importers on June 30, 1890. The importers procured the return of the board of United States general appraisers to be filed in the circuit court, under the provisions of the above-cited act of June 10, 1890, and obtained from the court an order referring the matter to one of said board of United States general appraisers, as an officer of the court, to take further evidence therein. Upon this reference voluminous testimony was produced on behalf of the importers, and also on behalf of the collector and the government. The testimony so taken showed that the merchandise consisted of Sumatra leaf tobacco, unstemmed, packed in the usual and ordinary manner, in 37 bales, which were divided on the invoice, as to marks and numbers, in 3 lots,—the first lot containing 10 bales, the second 18 bales, and the third 9 bales; that upon the arrival of the merchandise it was weighed by the United States weigher, who made his return of the gross weight, of the tare, and of the net weight of the aggregate tobacco, and also of each bale thereof; that the collector designated and caused to be sent to the appraiser's stores for examination 1 bale from the first lot of 10, 2 bales from the second lot of 18, and 1 bale from the third lot of 9, making 4 bales out of the importation of 37 bales; that these 4 sample bales were opened by the United States examiner at the appraiser's stores by cutting the covering of the bales, and opening the contents, in the manner usually employed in examinations made in the trade dealing in a like class of tobacco; that from each sample bale 10 hands of the tobacco were withdrawn by the examiner, taking the hands indiscriminately from the different parts of the bale; that the examiner carefully examined the leaves of the tobacco in each hand so withdrawn, and determined that all the tobacco was of the requisite size and necessary fineness of texture to be suitable for wrappers; that each hand was weighed by the examiner, and the leaves in each hand counted; that from a table prepared by the treasury department, and issued to the examiners for their use, the number of leaves weighing over 100 to the pound was ascertained, and, in the case of the first lot of 9 bales, 8 hands were found to contain leaves running less than 100 to the pound, and were consequently placed under a column as dutiable at 35 cents per pound, under the provisions of Schedule F, paragraph 247, Tariff Ind. (New,) of the tariff act of March 3,

1883, and 2 hands were found to contain leaves requiring more than 100 to the pound, and were placed in a 75-cent column, as being of the tobacco dutiable at that rate per pound, under paragraph 246, Tariff Ind. (New,) of said schedule and tariff act, the proportion being, therefore, 20 per cent. of the lot dutiable at 75 cents per pound, and 80 per cent. dutiable at 35 cents per pound; that in the second lot of 18 bales all of the hands drawn as samples were found to contain leaves requiring less than 100 to the pound, and that whole lot was consequently returned as dutiable at 35 cents per pound; that in the third lot of 9 bales, out of the 10 hands drawn from the sample bale, 6 of such hands contained leaves requiring more than 100 to weigh a pound, and were returned as dutiable at 75 cents per pound, and 4 hands contained leaves weighing less than 100 to the pound, and were returned as dutiable at 35 cents per pound, namely, 60 per cent. of the lot at 75 cents, and 40 per cent. at 35 cents, per pound; that the entire invoice was liquidated at these same proportions in the lots, respectively, and the duty assessed accordingly by the collector.

The importers, in their protest, which consisted of 24 different alternative allegations of alleged error in the classification of the merchandise by the collector, took the ground, among other things, that the tobacco was not of the requisite size and of the necessary fineness and necessary weight to bring it within the 75-cent provision of the tariff act; that the examination was illegal, and contrary to law; that the tobacco was put up in the usual manner, and that any attempt to separate the leaves as they exist in the hands for the purpose of classification was illegal, and contrary to law; that the hand should be taken as the unit of quantity; that the bale should be taken as the unit of quantity; that the invoice should be taken as the unit of quantity; that the examination of only 10 hands of a bale was not in compliance with the requirements of sections 2901, 2939, Rev. St. U. S.; that the regulations of the secretary of the treasury with respect to the classification of such leaf tobacco had not been complied with; that the leaf tobacco in question, if found to be uniform in its putting up and packing, so as to constitute but one kind or line of tobacco, if 85 per cent. of it was not of the requisite size and of the fineness and of the weight specified in paragraph 246 of the tariff act of March 3, 1883, then the whole lot was dutiable at only 35 cents per pound, under paragraph 247 of said act. In behalf of the government the testimony of several trade witnesses was produced on the reference above mentioned, who testified that Sumatra leaf tobacco at the time of the passage of the tariff act of March 3, 1883, was examined in the trade, upon purchases and sales thereof, by opening one bale in ten, and sometimes one bale in four or five, and withdrawing from the sample bale from four to ten hands, in the same manner as was done in the present case; and that it was never customary in the trade to draw more than ten hands from a sample bale, as the withdrawing of more would tend to destroy the bale, or materially injure it as an original package.

On the trial in the circuit court, after the reading of the testimony as above, counsel for the importers argued against the regularity of all the proceedings by the collector and his subordinates, claiming that the ex-

amination was not a proper or sufficient one; that the character and weight of the tobacco could not be ascertained in the manner pursued by the government officers, and that it was the duty of the United States weighers to weigh the tobacco in the course of such examination when it became necessary to ascertain the weight of leaves weighing more or less than 100 to the pound; and that the United States weighers, not having officiated in weighing the leaves upon such examination, vitiated the result obtained by the examiner.

In behalf of the collector and the government, it was argued by the United States district attorney that the statute in the case of this merchandise only required a practical and business-like examination of the tobacco; that nothing in the law could be construed to require such examination as would seriously injure or perhaps destroy some part of the importers' merchandise; that the examination of no more than one bale in ten was required by law or by the treasury regulations; that such examination had been conducted, as was shown by uncontradicted evidence, in accordance with the usual proceedings in cases of examination of Sumatra leaf tobacco in the trade and commerce of this country at the time of the passage of the tariff act, and that such examination as made by the government officers was entirely fair and just: (citing *Sampson* v. *Peaslee*, 20 How. 571;) that the examiner having determined that all of the tobacco in the ten hands withdrawn by him from each sample bale was of the requisite size and fineness suitable for wrappers, (which finding was uncontradicted by evidence,) and having ascertained the proportion of the hands so examined in which the leaves weighed over 100 to the pound, and the proportion in which the leaves weighed less, and having determined and set apart in his examination those hands containing the light-leaved tobacco from the hands containing the heavy-leaved tobacco, was a division of the hands, and consequently of the sample bale, and of the whole lot represented by that bale, into two distinguishable quantities; that such division, so made, constituted the two masses of the tobacco as contained in each lot, and that such divisions were as separable and distinct for the purposes of classification as were the two kinds of tobacco separated in the bales in the case of *Falk* v. *Robertson*, decided in the supreme court of the United States, as reported in 137 U. S. 225, 11 Sup. Ct. Rep. 41; and that each of such divisions was the unit upon which the 75-cent rate should be computed; the bale, as decided, not being the unit. In the *Falk Case, supra*, it was further argued that the United States weighers had nothing to do with weighing any portion of the merchandise for the purpose of its classification for duty; the weight of the tobacco upon entry having been determined by the United States weighers, as shown by the return in this case. *Marriott* v. *Brune*, 9 How. 634. The United States district attorney also cited Rev. St. U. S. §§ 2882, 2890; Treas. Dept. Reg. 1884, arts. 1455–1470, incl.

*Charles Curie*, (*Wm. Wickham Smith*, of counsel,) for importers.

*Edward Mitchell*, U. S. Atty., and *James T. Van Rensselaer*, Asst. U. S. Atty., for the United States.

WHEELER, District Judge. In the matter of the appeal of Blumlein & Co. as to the duty on leaf tobacco. Schedule F of the act of 1883 provided that—

"Leaf tobacco, of which eighty-five per cent. is of the requisite size and of the necessary fineness of texture ·to be suitable for wrappers, and of which more than one hundred leaves are required to weigh a pound,—if not stemmed, seventy-five cents per pound; if stemmed, one dollar per pound."

Here was a lot of leaf tobacco in bales, packed in the usual way, as tobacco is usually packed, all of it of the requisite size and necessary fineness of texture to be suitable for wrappers, and enough of it of the requisite lightness to make 20 per cent. of it light enough to take more than 100 leaves to weigh a pound, and 60 per cent. of other parts of it light enough to take over 100 leaves to weigh a pound. The bales were of uniform quality, and this percentage was made by sample of 10 hands, drawn from sample bales of more than 1 in 10, and weighing it. The custom-house officers ascertained this percentage, it seems to me, in the proper way. It is said that it ought to have been weighed by a United States weigher, but I do not think so. When it is getting at the classification of the goods, I do not think that is necessary. I do not see but that they proceeded regularly in ascertaining what these goods were. But when they got it done, (it was unstemmed,) they put 75 cents per pound on as many pounds of those bales in which there was tobacco of the requisite lightness in one case as 20 per cent. would be of the whole, and in the other case as 60 per cent. would be of the whole. They did not assess 75 cents a pound on any particular mass or quantity of tobacco, but they found in one mass 20 per cent. of the requisite lightness mingled in the usual way with the rest, and in the other mass 60 per cent. of the requisite lightness so mingled; and then co...puted the number of pounds there would be of the requisite lightness at those rates per cent., and assessed the duty on that number of pounds, as an undivided part of the whole, and exacted that duty, which was paid. If that is right, the decision is right; if not, not. Now this statute contemplates that in this tobacco there will be some that is heavy and some that is light; it will not be of uniform weight. It is not to be sorted out, and have all the tobacco that is light enough to take 100 leaves or more to make a pound in one package, and all the other in another package, for this purpose. The two kinds are to be put in together in the usual way, and that is shown by the fact that it says, if there is 85 per cent. of the light kind in with the other kind,— if it comes up to that,—then the duty shall be 75 cents per pound; which would not be the provision at all if it was to be classified the other way, and all that was of the requisite lightness picked out. When tobacco is put up for classification in a mass, they are to ascertain what per cent. there is in the mass which is of a uniform quality—that comes up to this standard; and, if 85 per cent. of it comes up, then it is to pay 75 cents a pound if unstemmed, and a dollar a pound if stemmed. The point was how this tobacco was to be rated. When they established what they did, they established as to one lot, packed in the ordinary

way, that 20 per cent. of it was of requisite lightness. The result was that the tobacco did not come up to 85 per cent., and was assessable only at 35 cents per pound. It was not of the quality that should pay 75 cents per pound; it did not come up to that. The collector assessed 75 cents per pound on this tobacco, which was in with that assessable at 35 cents per pound; that is, not 75 cents per pound on the whole mass, but 75 cents per pound on 20 per cent. of the whole mass, undistinguished from the rest. If that was the way this was to be done, this law ought to read, "seventy-five cents on as many pounds of the whole as the per cent. of tobacco of the requisite lightness makes;" which obviously is not the meaning of the act. It did not contemplate that the tobacco was to be assessed in that way, but the mass of tobacco of uniform kind was to be looked at, and, if the per cent. came up to 85, then it was to pay the higher rate; if not, the lower rate. So none of this tobacco came up to the higher rate. The highest was 60 per cent., instead of 85, and I think none of it was assessable beyond 35 cents a pound.

Now this case of *Falk* v. *Robertson*, 11 Sup. Ct. Rep. 41, which I tried, seems to be relied upon; but there, at the invitation of the customs officers, was packed into a bale a separate mass of tobacco of the requisite fineness and lightness. That was done for the purpose of bringing the bale down below 85 per cent. The point was whether that was right. I thought at first it was; I thought the bale was the unit. In thinking it over afterwards, I thought not. It was a mass of tobacco packed to be of the same grade as usually packed, and made part of a bale, distinguishable by itself, of the requisite fineness and lightness, and that was to be assessed accordingly. I so decided it, and the supreme court said that was right, not because there was to be found in there leaves of the requisite lightness, but because in some distinguishable mass there was tobacco of the requisite lightness. I think that was attempted to be followed here, but mistakenly, because here are only leaves packed in just as tobacco is packed ordinarily,—some of the requisite lightness and some not,—but not 85 per cent. of the requisite lightness in the mass; therefore I think that the decision of the appraisers should be reversed.